Matter of Adler (Garyfalia K.) (2024 NY Slip Op 24099)

[*1]

Matter of Adler (Garyfalia K.)

2024 NY Slip Op 24099

Decided on March 28, 2024

Supreme Court, Nassau County

Knobel, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on March 28, 2024
Supreme Court, Nassau County

In the Matter of the Application of Nicole M. Adler, M.D., 
 Chief Medical Officer, NYU Langone Hospital-Long Island, Petitioner, For the Appointment of a Guardian for the Person and Property of Garyfalia K., 
 An Alleged Incapacitated Person.

Index No. 850177/2023

Tammy Lawlor - Attorney for Petitioner
Miller & Milone, PC
100 Quentin Roosevelt Blvd, Ste 205
Garden City, NY 11530
(516) 296-1000
tlawlor@millermilone.com
Alexander E. Sklavos - Court Evaluator
Law Offices of Michael J. Alber PC
21 Walt Whitman Road, 2nd Floor
Huntington Station, NY 11746
(516) 248-4000
aes@sklavoslaw.com
Brian Davis - Counsel to AIP
400 Garden City Plaza, Ste 430
Garden City, NY 11540
(516) 542-0249
BrianJDavisEsq@aol.com

Gary F. Knobel, J.

Papers Considered:
Petition (NYSCEF Doc. No. 1) 1
Exhibits to Petition (NYSCEF Doc. No. 2-4) 2
Hearing Exhibits 3
73 Emails from Nickolas K. 4
This is a contested and highly emotionally charged Article 81 guardianship proceeding for an order appointing a guardian for the personal needs and property management of Garyfalia K., an alleged incapacitated person ("AIP"), which has been complicated by the existence of a health care proxy and orders of protection issued by a criminal court in favor of two of the petitioner hospital's employees and against Nickolas K., the son of the AIP, who chose not to formally appear in the proceeding.[FN1]
The trial of this proceeding is unfortunately an example of the frequent vitriol, anger and verbal abuse unfairly directed at guardianship judges, court appointees, and elder law attorneys by inappropriately labeled "interested parties," who have not appeared formally in the proceeding but are relatives or friends of the AIP and are extremely distressed over the physical and/or mental condition of that person, especially if the AIP is nearing the end of her or his life.
Thus this proceeding is illustrative of the "chaos" caused, as one commentator recently described it, by the procedural omission by the drafters of Article 81 of the Mental Hygiene Law pertaining to the standing, and the rights, if any, of the individuals who are required to receive statutory notice of the [*2]proceeding pursuant to Mental Hygiene Law § 81.07 and who somehow believe that they are automatically parties to the proceeding, that they can cross-examine witnesses (compare, Matter of Azzi (Trapani), 141 AD3d 1159, 1161), and that they can present hearsay evidence in a contested proceeding (see, Elizabeth A. Adinolfi, Chaos in the Courts: A Procedural Solution to Rein in Contested Article 81 Cases, NYS Bar Assn. Elder and Special Needs Journal Vol.33 No. 3 [2023]).
Mental Hygiene Law §81.07 requires that a guardianship proceeding pursuant to Article 81 must be commenced by filing a petition and an order to show cause, which is then required to be served, as relevant to this discussion, upon the following individuals pursuant to §81.07 (g) (1), in pertinent part:
(i). . ..the spouse of the person alleged to be incapacitated, if any; the parents of the person alleged to be incapacitated, if living; the adult children of the person alleged to be incapacitated, if any; the adult siblings of the person alleged to be incapacitated, if any; the person or persons with whom person alleged to be incapacitated resides; and
(ii) in the event no person listed in subparagraph (i) of this paragraph is given notice, then notice shall be given to at least one and not more than three of the living relatives of the person alleged to be incapacitated in the nearest degree of kinship who are known to the petitioner or whose existence and address can be ascertained by the petitioner with reasonably diligent efforts; and
(iii) any person or persons designated by the alleged incapacitated person with authority pursuant to sections 5-1501, 5-1505, and 5-1506 of the general obligations law, or sections two thousand nine hundred five and two thousand nine hundred eighty-one of the public health law, if known to the petitioner; and
(iv) if known to the petitioner, any person, whether or not a relative of the person alleged to be incapacitated, or organization that has demonstrated a genuine interest in promoting the best interests of the person alleged to be incapacitated such as by having a personal relationship with the person, regularly visiting the person, or regularly communicating with the person. . . .
The statute does not characterize these individuals or entities or organizations as "interested parties" although that catch-all misnomer has permeated the nomenclature of guardianship proceedings. 
Moreover, neither Article 81 of the Mental Hygiene Law, nor Article 4 of the [*3]Civil Practice Law and Rules, which governs special proceedings such as guardianship proceedings, specify a roadmap for a concerned individual as to how that person can contest an Article 81 guardianship petition (compare, Mental Hygiene Law § 81.06 [a][6]). Noticed individuals could of course retain an attorney, or represent themselves in the proceeding, yet contrary to popular belief, there is no formal mechanism suggested or directed in either statute. Instead, individuals entitled to participate in the special proceeding will usually file what are unofficially labeled "cross petitions," although technically there is no such procedural device specified or permitted in Article 81 or Article 4 (see, In re Guardianship of Staiano, 160 Misc 2d 494, 496 [Sup Ct Suffolk Co., Luciano,J. March 9, 1994]). CPLR § 402, titled "[P]leadings," states in pertinent part that "[t]here shall be a petition, which shall comply with the requirements for a complaint in an action, and an answer where there is an adverse party. . ..The court may permit such other pleadings as are authorized in an action upon such terms as may be just [emphasis added]." However, no other types of pleadings are specified or authorized. Furthermore, Mental Hygiene Law §81.11(b) simply states that "any party to the proceeding shall have the right to: (1) present evidence; (2) call witnesses, including expert witnesses; (3) cross examine witnesses, including witnesses called by the court; (4) be represented by counsel of his or her choice [emphasis added]."
The vacuum created by not requiring a formal method of appearance in Article 81 proceedings, and requiring interested or concerned individuals to perform at least a semblance of procedural formality, has led kind, caring judges to use their inherent broad discretion and allow these self-represented individuals an opportunity to be heard in some manner.[FN2]
Should they be allowed to cross-examine witnesses? Absolutely not. Nor should they be required to seek permission to intervene in the proceeding (see, Elizabeth A. Adinolfi, Chaos in the Courts: A Procedural Solution to Rein in Contested Article 81 Cases, supra). The trial or hearing of a contested Article 81 proceeding for the appointment of a guardian for the alleged incapacitated person, whether it is conducted in the courthouse or virtually, is very serious litigation since the person's civil liberties may be taken from them. It is not a free-for-all, it is not a shouting match, it is not [*4]a broadcast television reality show, it is not a small claims case. The forum is a court of law where decorum and the rule of law must be adhered to in the pursuit of truth and a just result. 
The Advisory Committee on Article 81 Guardianships and the Advisory Committee on Civil Practice need to convene together and attempt to recommend amendments to both the CPLR and Article 81 to ameliorate the existing procedural conundrum.
Turning now to the substantive issues presented at trial, this Court must first determine, before it may appoint a guardian, that (1) a guardian is necessary to provide for the personal needs of that person, including food, clothing, shelter, health care, or safety and/or to manage the property and financial affairs of that person; and that (2) the person agrees to the appointment, or, as in the case at bar, that the person is incapacitated within the meaning of the statute (Mental Hygiene Law §§ 81.02[a][1], [2]); Matter of Joan A.C. (Debra A.C. — Irene R.), 217 AD3d 941, 942). A person is considered incapacitated when the person is likely to suffer harm because: (1) the person is unable to provide for personal needs and/or property management; and (2) the person cannot adequately understand and appreciate the nature and consequences of such inability (Mental Hygiene Law § 81.02[b][1], [2]).
It is undisputed that Garyfalia K., an 87-year-old woman hospitalized in petitioner's facility since October 16, 2023, is a non-verbal quadriplegic, requiring feeding through a peg tube and total assistance with all activities of daily living. She was not awake during the virtual trial and it is clear to the Court that no meaningful participation would have resulted from her presence at the trial. Based upon the evidence adduced at trial, including the testimony and report by the court evaluator, the Court finds that Garyfalia K. has functional limitations which impair her ability to manage her personal and property management needs, that Garyfalia K. cannot adequately understand and appreciate the nature and consequences of such inability, that she would suffer harm and danger if a guardian is not appointed on her behalf. Accordingly, the Court finds that the petitioner has established by clear and convincing evidence that Garyfalia K. is an incapacitated person as defined by Mental Hygiene Law § 81.02. 
The remaining question to be determined is a difficult one based upon the present factual circumstances: who should be the guardian for Garyfalia K. — her son, who never filed a written petition requesting that relief but did orally inform the court evaluator and this Court that he wanted to be the guardian, or an [*5]independent individual or community not-for-profit guardian?
"In selecting a guardian for an incapacitated person, the primary concern [for the Court] is the best interests of the incapacitated person" (Matter of Audrey D., 48 AD3d 806, 807, 853 NYS2d 143 [2008]; see Matter of Von Bulow, 62 NY2d 221, 224, 470 N.E.2d 866, 481 N.Y.S.2d 67 [1984]); (Matter of Marilyn A.I. [Kevin D], 106 AD3d 821, 822, 964 N.Y.S.2d 640 [2013]). This determination involves the judgement of the facts and discretion of the court (Matter of Von Bulow, supra). "While appointment of a family member is preferable, it is well within the Supreme Court's discretion to appoint an outsider upon a determination that the available family member is, in some way, not suitable" (Matter of Audrey D., supra at 807). 
Garyfalia K. designated her son Nickolas K. as her health care agent for an indefinite period of time and authorized him to "make any and all health care decisions" for her since December 20, 2015 (see court evaluator's report exhibit B). There is no question that Nickolas K. truly cares for his mother and has, according to his testimony, been single-handedly taking care of his elderly parents for four years. Nevertheless, the Court is unable to appoint Nickolas K. to be the personal and property management needs guardian for Garyfalia K. at this time for the reasons set forth below.
Petitioner submitted evidence to substantiate its argument that Nickolas K.'s irrational behavior and overzealous patient advocacy for his mother, based upon what he believed was the proper way to medically treat his mother, together with the purported stalking and harassment of hospital personnel, has resulted in a criminal proceeding pending against him in the District Court of Nassau County (CR-021541-23NA)[FN3]
where he is charged with three misdemeanors and two orders of protection. These orders bar Nickolas K. from entering the hospital where his mother currently resides and is effective through November 5, 2024. Furthermore, each of the misdemeanor charges carry a sentence of up to one year of incarceration if convicted, and it is possible that these orders of protection can be in effect for five years from the date of sentence (Penal Law § 70.15[1]; Criminal Procedure Law § 530.13[4]). If he was convicted, not only would it impact his physical ability to serve as guardian, but it would bar him from serving as his mother's guardian (see Mental Hygiene Law § 81.19). The Part 36 fiduciary rules of the Chief Judge specifically state that "[n]o person convicted of [*6]a felony, or for five years following the date of sentencing after conviction of a misdemeanor (unless otherwise waived by the Chief Administrator upon application), shall be appointed unless that person receives a certificate of relief from disabilities" (22 NYCRR §36.2[c][7] [emphasis added]; see Matter of S.M., 13 Misc 3d 582 [Sup. Ct. Bronx 2006]; see generally Matter of Ernestine R., 61 AD3d 874 [2d Dept. 2009]). Although Nickolas K. is presumed innocent until proven guilty, he made numerous admissions at trial which could negatively impact the criminal case pending against him.
The Court cannot appoint an individual or a family member who is facing serious criminal charges and subject to orders of protection which would prevent the guardian from entering petitioner's facility if the AIP is brought there again in the future.
What is also of great concern to this Court, in considering whether to appoint Nickolas K. as the guardian for his mother, is the substantial proof adduced at trial demonstrating Nickolas K.'s lack of cooperation with the court evaluator, and Nickolas' inability to be reasonable and cooperate with hospital personnel during the care, treatment and potential discharge of his mother from the hospital. Despite repeated instructions not to speak out of turn, Nicholas K.'s vituperative behavior [FN4]
was on full display during the trial with his numerous outbursts interrupting witnesses, the attorneys and this Court. Throughout the proceeding Nickolas declared that he is only interested in bringing his mother home, whether or not that is practicable or prudent, and did not want her discharged to a skilled nursing facility under any circumstances since he believed that he could take of her better care of her at his home. 
Simone McIntyre, RN testified on behalf of the petitioner that Garyfalia K. was ready to be discharged from the hospital, but that she needs 24/7 care, requiring oral care, oxygen administration, cleaning, wound care and cleaning, incontinence care, turning and rotating care to prevent skin breakdown, oxygen and feeding tube care. Ms. McIntyre further testified in order for Garyfalia K. to be safely discharged home at this time, the home would need to be assessed by the hospital to see if it is feasible, with certified aides and proper medical equipment in place, for Garyfalia K. to return home. In addition the hospital would require training for the aides and Nickolas K., and specific equipment in the [*7]home. However, these conditions are not agreeable to Nickolas, since he testified that he will not allow anyone into his home due to the possibility of he and his parents contracting the COVID-19 virus, except perhaps for women aides of Greek decent. Nickolas K. further stated in an email to the Court and to all counsel that ". . . I will hire private paid aide and I will never get Medicaid aides," even though he claims that he has been unemployed for at least four years, and that his parents have no assets.[FN5]
The court evaluator was included in this ban and consequently was obstructed in performing his duties in evaluating the sufficiency and reliability of available resources to provide for the personal or property management needs of Garyfalia K. (see, Matter of Harold W.S. (Mark P. -Lauralyn W.), 134 AD3d 724, 725).
Accordingly, in view of the pending the criminal allegations against Nickolas K., his obstinate behavior towards the petitioner's doctors, nurses and staff,[FN6]
his strident and voluminous communications with the court,[FN7] the court appointees and petitioner's counsel, as well as his demeanor during the trial, the Court finds that Nickolas K. has not acted in the best interests of his mother, Garyfalia K., and thus has breached his fiduciary duty to her under the health care proxy she executed (see, Matter of Vicki M.A. (Lynda P. — Lisa P.), 218 AD3d 769, 770-771; Matter of Dorothy K.F. (Michael F. — Stephenie F.), 145 AD3d 887, 888). Consequently, the health care proxy is revoked (Mental Hygiene Law § 81.29 (d); Matter of Vicki M.A. (Lynda P. — Lisa P), supra),
In view of the foregoing, and based upon the report and recommendation of the court evaluator, Alexander Sklavos, Esq., the Court will appoint, in the order and judgment to be submitted to the court by petitioner's attorney, an independent guardian from the Part 36 fiduciary list, or a not-for-profit community guardian, for a period of one year, to act as the guardian for the [*8]personal and property management needs of Garyfalia K. The guardianship will be re-evaluated at that time pending the outcome of Nickolas K.'s criminal proceeding and his behavior with the nursing facility and any guardian appointed by this Court.
Furthermore, in view of the opinion by the petitioner's medical staff that Garyfalia K. is ready to be discharged from the hospital setting to a skilled nursing facility, of which there may be 15 to choose from according to the testimony of Ms. McIntyre , the Court appoints Thomas Manzi, Esq. (FID No. 115615), 320 Carleton Avenue, Ste 6300, Central Islip, NY 11722 (631) 270-6500, TManzi@ThomasJManziLaw.com, to serve as temporary guardian of the personal needs and property management of Garyfalia K. and effectuate her discharge from the hospital (see 42 CFR § 482.43). Nicholas K. is directed to cooperate fully with Mr. Manzi and work with him and the nursing facility in possibly effectuating the transfer of Garyfalia K. to the residence of Nickolas K. In the interim Nicholas K. is permitted to visit with his mother within the rules of the nursing facility and subject to the criminal orders of protection. The application by the petitioner for an order of protection in its favor and against Nickolas K. is granted in view of the bitter discord between Nickolas and the hospital's staff.
The order and judgment to be submitted herein shall be served on the court appointees and provide the guardian with all of the powers requested in the petition as authorized under sections 81.21 and 81.22 of the Mental Hygiene Law. No bond is required to be posted at this time.
With respect to compensation to the court appointees, the Court directs court appointed counsel and the court evaluator to file, at the time of the submission of the order and judgment, an affidavit or affirmation of the services they provided in this proceeding. Their reasonable compensation, as well as the compensation to the temporary guardian, shall be paid by petitioner in amounts to be determined by the Court. The petitioner is also directed to obtain a transcript of the entire trial to accompany the proposed order and judgment.
See orders signed this date appointing a temporary guardian and issuing an order of protection. A copy of those orders, and a copy of the order and judgment which will be signed by this Court, shall be served on Nickolas K. by email and overnight express mail service.
Settle order and judgment.
ENTER
DATED: March 28, 2024
HON. GARY F. KNOBEL J.S.C.

Footnotes

Footnote 1:The testimony adduced at the trial revealed that Nickolas K. was urged by the court appointees to file a petition or retain counsel. 

Footnote 2:Nickolas K. was permitted several times by this Court, despite his constant interrupting of the attorneys, the witnesses and the Court, to testify and to present evidence in support of his oral request to be appointed guardian.

Footnote 3:Nicholas K.'s next court appearance in district court is April, 19, 2024.

Footnote 4:At the end of the next to last day of the trial, Nickolas K. shouted that if this Court does appoint him the guardian, both of his parents will die.

Footnote 5:See email dated Tuesday March 26, 2024 at 1:06 PM: "Subject: Index #850177/2023, guardianship, Garyfalia [K.] Dr deligianidis [sic] (my mom's home care doctor ) note which statesthat[sic] i[sic] take my mom myself sufficiently and there is no need for additional care!ake[sic] care my mom"

Footnote 6:Hon. David J. Gugerty on February 15, 2024, instructed Nickolas K. to refrain from harassing, annoying, alarming, or intimidating anyone in the Court system or from the hospital (see transcript February 15, 2024).
7 Nickolas K. called chambers on at least three occasions from an anonymous number and sent approximately 73 emails to the parties and the Court between March 1, 2024 through March 28, 2024, many of which were numerous pages long and were extremely accusatory.